MERLE BECKER, ADMINISTRATRIX OF THE ESTATE OF ROBERT R. BECKER (ALSO KNOWN AS RUDOLPH R. BECKER), DECEASED, APPELLEE, V. MARGARET HASEBROOCK, APPELLANT, IMPLEADED WITH CONTINENTAL GRAIN COMPANY, A CORPORATION, APPELLEE.

59 N. W. 2d 560

Filed July 3, 1953. No. 33361.

*Moodie & Burke* and *Deutsch & Jewell,* for appellant.

*Robert G. Fuhrman, Shrout & Brown,* and *Morsman, Maxwell, Fike & Sawtelle,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action to recover for the wrongful death of Robert R. Becker brought by his wife as the adminis-

tratrix of his estate. The jury returned a verdict for $15,000 on the cause of action for the wrongful death, and for $775.95 on the cause of action for funeral expenses. The defendant appeals.

The litigation arose out of an automobile accident. The evidence shows the following facts: The defendant, Margaret Hasebroock, was driving south on U. S. Highway No. 275 at about 10 a. m. on January 14, 1952, on her way from West Point to Lincoln. She testifies that for some distance out of West Point the highway was level and vision was good to the extent that she could see well for one-half mile. About 1 mile south of West Point she was following another automobile as it approached the crest of a hill. Both automobiles were proceeding at a speed of approximately 25 miles an hour. She speeded up her automobile at this point and turned into the left lane of the highway to pass the automobile ahead of her. As she came abreast of the latter car, it speeded up and both automobiles proceeded abreast down the other side of the hill. The evidence shows that a fog had settled over this section of the highway which impaired visibility. As the two automobiles approached the incline of the hill across the valley, her automobile collided with that of the decedent who was proceeding north. The decedent, Becker, was killed instantly in the accident. The two automobiles were found shortly thereafter by two members of the Nebraska Safety Patrol and others using the highway. After the accident the Becker automobile was on its right-hand side of the road with the right rear wheel just off the pavement and the right front wheel just on the pavement. Defendant's automobile was on its left-hand side of the road with its right rear wheel within a foot of the center of the highway and its left front wheel near the left edge of the pavement. The bumpers of the two cars were about 4 feet apart. It appears to have been a near head-on collision with the right front of each car appearing to have been damaged more than

the left.  There was a yellow no-passing line restraining defendant from crossing into the left lane at the point of the accident which began 36 yards north of the front end of defendant's car.  The concrete pavement was wet and the yellow restraining line was clearly discernible. The physical facts clearly show that the accident occurred on the east side of the highway on the left side of the yellow no-passing line restraining southbound traffic. Defendant testifies that she was driving with headlights and fog lights burning and that no lights were burning on the Becker car.  There were no lights burning on either car after the accident.  No persons other than the drivers were in the automobiles.  The automobile which defendant attempted to pass did not stop and defendant has no information concerning the car or its occupants.  Defendant testifies that she met a dozen or so cars before she entered the valley or hollow between the higher terrain on each side and that most of them had their headlights burning.  It was about 1,000 feet from the end of the yellow line north of the crest of the hill to the beginning of the yellow line existing at the scene of the accident.  In other words, defendant had 1,000 feet to pass the car ahead of her between the yellow no-passing lines restraining southbound traffic.  Defendant says she looked to the south before starting to pass the car ahead and that she saw no car coming.  She states that the Becker car came "out of nowhere" and "it was just right there in front of me."  She did not know the speed at which she was driving at the time of the accident except that she was abreast of the other car which speeded up when she tried to pass.  In one place in her testimony she says the Becker car was practically in the center of the road when she first saw it. She says she was blocked from turning right by the car she was attempting to pass and was forced to pull for the ditch on her left-hand side of the road.  At another time she says with reference to the Becker car being in the center of the highway:  "As I saw the picture in

that brief fleeting moment; that is what I saw."

With reference to visibility at the place of the accident, the evidence of the defendant is summarized in the following questions and answers from her testimony: "Q. Do you mean you could see ahead at the time? A. I could see a certain distance ahead. Q. How far could you see? A. I wouldn't know. Q. Very short distance, wasn't it, Mrs. Hasebroock? A. I don't know. Q. Or was it a long distance? A. I don't know." Other witnesses merely described the climatic condition at the scene of the accident as very foggy.

It was upon the foregoing that the jury returned a verdict for the plaintiff. It is undisputed that defendant was driving on the left-hand side of the road and was over the yellow no-passing line when the collision occurred. The Becker car after the accident was on the right-hand side of the road; in fact, the right rear wheel was off the pavement on the shoulder. It was a foggy. day and defendant was driving at a speed she would not even estimate. Defendant was unable to state how far she could see in the fog, although she does say that headlights penetrated it. The evidence was clearly sufficient to sustain a finding by the jury that defendant was negligent. The question raised is whether or not the trial court erred in not submitting the question of contributory negligence to the jury.

It is fundamental that where contributory negligence is alleged as a defense and there is evidence in the record to sustain it, the trial court is required to instruct the jury on that issue whether requested to do so or not, and a failure to so instruct under such circumstances is reversible error. Lieb v. Omaha & C. B. St. Ry. Co., 119 Neb. 222, 228 N. W. 364. The defendant asserts that. contributory negligence was pleaded and evidence in support thereof adduced. The evidence relied upon was the failure of the decedent to have his lights on, as testified by the defendant, under the conditions existing at the scene of the accident. The applicable statute, insofar

as it is here pertinent, provides: "Every motor vehicle upon a highway within this state during the period from · a half hour after sunset to a half hour before sunrise, and at any other time when there is not sufficient light to render clearly discernible persons or vehicles upon the highway at a distance of five hundred feet ahead, shall be equipped with lighted front and rear lamps * * *." § 39-778, R. R. S. 1943. There is no evidence in the record that a vehicle was not discernible at a distance of 500 feet. The evidence shows only that it was a foggy day and that defendant could see some distance ahead; how far she did not know. Such evidence does not establish a violation of this statute for failure to have front and rear lights burning at 10 a. m. Contributory negligence, like any other fact, cannot rest upon speculation or conjecture. There must be competent evidence to sustain it. The evidence that plaintiff's decedent was driving in the center of the road is very fragmentary and in our opinion insufficient to sustain a finding to that effect. The defendant testifies that in the brief fleeting moment, when she observed the Becker car before the accident, it appeared that it was in or near the center of the road. She refused to say that it was over the center line. The car ahead of defendant did not strike decedent's car. This evidence when viewed in connection with the fixed location of the two automobiles immediately following the collision is insufficient to sustain a finding of contributory negligence on the part of the decedent Becker. The trial court did not err therefore in refusing to submit the question of contributory negligence to the jury. The rule is that where contributory negligence is pleaded as a defense and there is no evidence to sustain it, it is error to submit the issue to the jury. Remmenga v. Selk, 150 Neb. 401, 34 N. W. 2d 757. Under the conclusions of fact as the jury found them to be and as we have here considered them, the case of Bainter v. Appel, 124 Neb. 40, 245 N. W. 16, is particularly applicable. We there said: "Plaintiff, then,

as to the north half of this highway, had the exclusive statutory right of way as against eastbound traffic thereon. This being true, plaintiff, as driver of his car, had the right to assume that no one, in violation of the express command of this legislation, would pass over the center line of this highway with his motor vehicle, travel eastward on the north half thereof, project his car into a cloud of dust on plaintiff's own side of the road, and strike him. The fact that the accident occurred in this manner constitutes ample evidence to go to the jury on the question of defendant Appel's negligence, and fully sustains the inference that plaintiff was wholly free from contributory negligence."

The defendant asserts that the doctrine of sudden emergency applies in that she was pocketed by the car she was attempting to pass. The applicable rule is announced in Callahan v. Prewitt, 141 Neb. 243, 3 N. W. 2d 435, wherein the following is approved: "'An automobile driver may not violate the rules of the road, and then invoke the doctrine of sudden emergency to relieve himself from liability to another who is injured as a result of his violation of such rules.'"

The defendant alleges error in stating the issues to the jury when the trial court in setting forth the claim of the plaintiff said that defendant was traveling 65 miles an hour when there was no evidence to that effect. The evidence failed to disclose the speed of defendant's car. The jury was advised that the statement of the issues was not to be treated as evidence but simply as a statement of what the respective parties claim. Under such circumstances there was no error prejudicial to the rights of the defendant. Nama v. Shada, 150 Neb. 362, 34 N. W. 2d 650.

The defendant complains of that part of an instruction stating: "Any person who drives any vehicle in such manner as to indicate either a willful or wanton disregard for the safety of persons or property is guilty of reckless driving." We do not think the giving of this in-

struction was prejudicial error, although we fail to see any reason for giving it under the evidence in this case. The instructions when construed as a whole fairly submit the case to the jury. The portion of the instruction complained of did not affect the substantial rights of the defendant. Its giving was harmless error. Hardung v. Sheldon, 133 Neb. 427, 275 N. W. 586; McCown v. Schram, 139 Neb. 738, 298 N. W. 681.

It is urged that the judgment for $15,000 on the cause of action for wrongful death was excessive. The evidence shows that the deceased was 68 years of age and in excellent health. According to the expectancy tables offered in evidence, his life expectancv was approximately 10 years. These tables are not binding and the jury could have properly found his life expectancy to have been in excess of 10 years. The deceased was a traveling auditor for a grain company. He had an expense account to cover his living expenses while on the road. He had an earning capacity between $250 and $300 a month. His wife, age 57, was wholly dependent upon him. The deceased was survived by five children, all married, who were, from time to time, the recipients of his bounty. We think the evidence was sufficient to sustain the verdict of the jury for $15,000. The judgment on the cause of action for wrongful death in this amount is affirmed.

Defendant contends that the verdict and judgment for $775.95 for funeral expenses is not sustained by the evidence. The record shows that the funeral expenses were paid by the wife of the decedent in the amount of $775.95. The only evidence relating thereto was the receipted statement of the undertaker which was received in evidence over the objection of the defendant. There was no evidence of the fair and reasonable value of the materials furnished or the services rendered. Such proof is essential to a recovery. The objection to the admission of the receipted statement should have been sustained. Likewise, the motion for a directed verdict

made at the close of plaintiff's evidence should have been sustained as to this cause of action. The rule is stated in Oliverius v. Wicks, 107 Neb. 821, 187 N. W. 73, and requires a reversal of the judgment for $775.95 for funeral expenses for the reason that it is not sustained by sufficient evidence.

The judgment for the plaintiff for $15,000 for the wrongful death of plaintiff's decedent is sustained. The judgment for $775.95 for funeral expenses is reversed. The costs of the appeal are taxed against the defendant.

AFFIRMED IN PART, AND
IN PART REVERSED.